## "LITTLE HEAVY" MAY v. THE STATE.

### No. 8416.   Decided April 9, 1924.

**1.—Possessing Intoxicating Liquor for the Purpose of Sale—Practice on Appeal—Res Gestae.**

Where, upon trial of possessing intoxicating liquor for the purpose of sale, the court's charge on principals did not give undue prominence to this theory, and the testimony of the State's witnesses as to the drinking of the liquid which smelled like choc beer, etc., was a part of the *res gestae* of the transaction, and the movements of said witnesses became material as shedding light upon the guilt of the defendant there was no reversible error.

**2.—Same—Evidence—Identification.**

There was no error in admitting testimony of State's witnesses buying two drinks from one of the State's witnesses, nor as to the identification of a certain bottle which contained the whisky in question, and the acting together of the parties, nor the testimony of the sheriff that he found a certain empty bottle with the odor of whisky on defendant's premises.

**3.—Same—Evidence—Declarations and Acts of Principals.**

Appellant's movement in and around the premises, and his presence and assistance in carrying on whatever business might have been carried on on the place in question by his co-principals and himself were material questions and admissible in evidence and there is no reversible error.

Appeal from the District Court of Young. Tried below before the Honorable H. R. Wilson.

Appeal from a conviction of possessing intoxicating liquor for the purpose of sale; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Binkley & Binkley*, for appellant.

*Tom Garrard*, Attorney for the State and *Grover C. Morris*, Assistant Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Young County of possessing intoxicating liquor for purposes of sale, and his punishment fixed at two years in the penitentiary.

Two men went to Tumble Inn in Young County on the night of August 21, 1923, to get whisky if obtainable. A woman named Maud Boyd was seen by them, but they then got no whisky. They had a conversation with Maud Boyd and left returning in twenty or thirty minutes. When they returned appellant was sitting on the porch of Tumble Inn and a car was in front which was not there when said parties went away. The two men were used as witnesses by the State. One of them had been informed that whisky was expected at Tumble Inn and when he saw appellant on the porch he called and asked about the whisky and appellant replied that it ought to be in any time, that he was going out to see about it, and further said "We have a pint of whisky in the house that Maud didn't know anything about," and informed witnesses that they could get a drink of that. They got out of their car and went in the house and Maud sold and served them a drink of whisky each for which they paid fifty cents per drink. Presently appellant and Maud got in the car which was standing in front of the Inn and drove away. Witnesses shortly thereafter went away but came back later and waited out in front of the Inn awhile and appellant and Maud drove up in the car. Both got out and each had a bundle. Appellant went out toward a vacant building near by and Maud carried her bundle into Tumble Inn. She presently called witnesses back to what seemed a combined dining room and kitchen where they were joined by appellant in a few moments, and there witnesses bought from Maud in the presence of appellant whisky, which she poured out of a half gallon fruit jar. Witnesses paid her four dollars for the whisky. The record reflects the use of plural pronouns in the statements made by appellant in speaking of the possession of the whisky and their expectation of the arrival of more. He said that "they" had a pint, and that "we" are expecting more. Three days after the above transaction the sheriff of the county went to Tumble Inn late in the night and found appellant asleep in a room with two children who

are referred to in the record as "her" children, the connection being such as that we infer they were the children of Maud Boyd. The officers found a large number of empty bottles in various rooms of the premises and in a vacant outhouse near by found twenty-four cases of choc beer. The proof does not show whether this latter liquor was intoxicating or not. Another witness for the State testified that during August she lived a short distance from Tumble Inn and saw appellant around that place continually, and that almost every day she saw him coming up to the Inn bringing cases containing bottles in his car and saw him going away from it carrying gunny sacks whose contents were unknown to her.

There are several bills of exception each of which has been carefully examined. We do not think the charge of the court open to the objection that it gives to the theory of principals undue prominence. The bill of exceptions complaining that the two State witnesses found Maud Boyd and another person drinking a liquid which smelled like choc beer, seems to present a matter of no materiality. The question involved was the guilt of the appellant as a principal or otherwise in the possession of whisky, and as the record seems to amply support that point, are not quite able to comprehend the possible injury referred to in said bill of exceptions. It was part of the res gestae of the transaction. The movements of Maud Boyd became material as shedding light upon the guilt of the appellant, it being the theory of the State that she and appellant were co-principals in the matters of possessing and selling whisky.

The bill of exceptions complaining that appellant was not present when the State witnesses bought two drinks of whisky from Maud Boyd, is not tenable in view of the fact that each of said witnesses testified that just immediately prior to their purchase of said liquor they were informed by appellant, who was on the front porch of the house, that there was a pint of whisky in the house of which Maud knew nothing, but of which he had told her and which they could obtain by going in. Complaint of the identification of a bottle said to be one containing liquor obtained from Maud Boyd, would not be sound. The act of Maud Boyd, according to the theory of the State, was the act of appellant, and, as stated above, the record shows that appellant and Maud Boyd had been away in a car together following his assertion that "they were going to see about it", and upon their return each had a bundle, following which Maud Boyd sold the bottle in question to the witnesses. Nor do we think it objectionable for the sheriff to testify that three days after the visit of the two men above mentioned, to Tumble Inn, he went there and found empty bottles and the odor of whisky, and found appellant on the premises in bed asleep.

The objection to the testimony of the finding of the choc beer in the vacant house at the time of the raid made by the sheriff would

seem to be an objection to the development of the surrounding facts. Proof from the State witnesses was overwhelming as to the presence and possession of whisky, and the only defense raised by the testimony offered on behalf of appellant was that of an alibi. Appellant went with his bundle toward the vacant building as above stated. The fact that twenty-four cases of choc beer were found in an outhouse near Tumble Inn, in view of the undisputed testimony of the guilt of Maud Boyd and some one else of the possession and sale of whisky, would seem to be a harmless matter, as was also the testimony of the witness Odessa Parks that she saw appellant have cases that looked like choc beer. Appellant's movements in and around the premises and his presence and assistance in carrying on whatever business might have been carried on there by Maud Boyd or by Maud Boyd and himself, were material questions to aid the jury in determining whether he was in fact a principal offender, and we perceive no more injury possible from showing his movements and possession of choc beer in connection with Maud Boyd, than if he had been shown to have operated with her in the management, control, possession and disposition of other things.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*